IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES DECKER,                    )
                                 )
            Plaintiff,           )
                                 )
    v.                           ) Civil Action No. 11-0787
                                 )
EDUCAP, INC. and                 )
DAVIS DAVIS ATTORNEYS,           )
                                 )
            Defendant.           )

MEMORANDUM

Gary L. Lancaster,                              May 22, 2012
Chief Judge.

This is an action under the Fair Debt Collection Practices Act (FDCPA). Plaintiff, James Decker, alleges that defendants, EduCap, Inc. ("EduCap") and Davis Davis Attorneys, harassed plaintiff in pursuit of a discharged debt in violation of the FDCPA, 15 U.S.C. §§ 1692 et seq., the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. §§ 201-1 et seq., and the common law tort of abuse of process. Plaintiff seeks damages and costs. Defendants have filed a motion for summary judgment, arguing that the debt at issue was not discharged in plaintiff's bankruptcy. [Doc. Nos. 37, 38]. Plaintiff does not contest the motion with respect to defendant Davis Davis Attorneys. However, plaintiff opposes the motion for summary judgment with respect to EduCap.

1

For the reasons set forth below, the motion will be granted.

I. BACKGROUND

Unless otherwise indicated, the following material facts are undisputed.

Defendant EduCap is a Virginia non-profit corporation created for the purpose of administering education loan programs. Defendant partners with private lenders to provide education loans to student borrowers, by acting as a disbursement agent and servicer of student loans, and agreeing to pay the lender the full outstanding balance of a loan if a borrower defaults. The loan that is the subject of this lawsuit was made through a partnership program between defendant EduCap and Bank of America. The partnership is governed by a written General Services Agreement ("GSA").

Under Schedule A of the GSA, EduCap processes loan applications, disburses loan funds on behalf of Bank of America, processes borrower forbearance requests, and is required to purchase defaulted loans from Bank of America.[1] However, all

---

[1] Plaintiff denied the substance of the GSA agreement in his Response to the Concise Statement of Material Facts [Doc. No. 42] based on defendant's failure to provide plaintiff or the court with a copy of the GSA. While the version of the GSA provided as an appendix to defendant's motion for summary judgment is heavily redacted, a relevant portion of the GSA titled "Schedule A" was provided for both the court and

funding of the original loans issued through the program is provided by Bank of America.

Plaintiff James Decker signed an agreement for the education loan at issue in July of 2006. Plaintiff's loan agreement contained a provision stating: "I understand that the loan is an education loan and is not dischargeable in bankruptcy except pursuant to 11 U.S. Code Section 523(a)3."

On August 24, 2006, the loan of $16,913.02 was disbursed to James Decker. The check and Truth in Lending disclosures provided to plaintiff indicated that the lender was Bank of America, and that the disbursement came from EduCap, "disbursement agent for Bank of America, N.A."

In May 2009, plaintiff communicated with representatives of EduCap and filled out a financial hardship forbearance form supplied by EduCap in an email message. He was approved for a forbearance in May 2008. Around December 2009, plaintiff stopped making monthly payments on the loan account, and on January 19, 2010, pursuant to the GSA, EduCap paid Bank of America the full outstanding balance of plaintiff's loan and acquired Bank of America's rights to the loan pursuant to a Certificate of Sale and Assignment.

---

plaintiff. [Doc. 39, Ex. # 10]. Because plaintiff is mistaken about defendant's failure to attach a copy of the relevant portions of the GSA, and no other objection to the facts was identified, the court finds that the material facts established by the agreement are not in dispute.

On May 21, 2010, Davis Davis Attorneys filed a civil lawsuit against plaintiff on behalf of EduCap in the Court of Common Pleas of Indiana County, Pennsylvania, to recover the defaulted student loan debt.

On July 8, 2010 plaintiff filed a voluntary petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Western District of Pennsylvania. The petition listed "Bank of America Student Loan," along with Davis Davis Attorneys, as one of plaintiff's creditors, with a claim of $17,170.00. On November 8, 2010 plaintiff was granted a general discharge by the Bankruptcy Court pursuant to 11 U.S.C. § 727. During the bankruptcy proceedings, plaintiff did not initiate an action to determine whether re-paying the student loan was an undue hardship.

In December 2011, EduCap, through Davis Davis Attorneys, took judgment by default in its civil lawsuit against plaintiff. Five months later, Davis Davis Attorneys mailed interrogatories in aid of execution of the default judgment to plaintiff. Plaintiff responded in May of 2011 by filing this lawsuit, through his bankruptcy counsel, in the Court of Common Pleas of Indiana County. Defendants removed the case to this court on June 14, 2011. [Doc. No. 1].

II. STANDARD OF REVIEW

The court shall grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party meets its burden of proving that no genuine issue of material fact exists, then the nonmoving party "must come forward with 'specific facts showing that there is a <u>genuine issue for trial.</u>'". <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (emphasis in original). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986); <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150-51 (2000) (citing cases).

The mere existence of some evidence in support of the nonmoving party will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a

5

jury reasonably to find for the nonmoving party on that issue under the governing substantive law. See Anderson v. Liberty Lobby, 477 U.S. at 248-49. Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. United States Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 322-23.

In summary, the inquiry in ruling on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is such that the movant must prevail as a matter of law.

III. DISCUSSION

Defendant has moved for summary judgment on the ground that plaintiff's education loan was not discharged in the Chapter 7 bankruptcy proceedings, and therefore, he cannot prove an essential element of each of his three claims. According to defendant, the student loan, made under a program funded in part

by a non-profit institution, was excepted from general discharge absent an undue hardship determination by the bankruptcy court. Plaintiff contends that because the student loan was funded entirely by Bank of America, a for-profit entity, it does not qualify for the exception to general discharge for governmental and non-profit educational loans. The parties do not dispute any material facts, and the issue can be decided as a matter of law.

The provision of the bankruptcy code governing discharge of education loans, 11 U.S.C. § 523(a), reads:

> A discharge under section 727 [of Title 11] . . . does not discharge an individual debtor from any debt --
>
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for --
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution [.]

Although the U.S. Court of Appeals for the Third Circuit has not interpreted the phrase "any program funded in whole or in part by a governmental unit or nonprofit institution," two other Courts of Appeals have done so. In In re Merchant, the U.S. Court of Appeals for the Sixth Circuit considered whether a loan made through a program involving a private bank and a university qualified for exemption from discharge under section

7

523(a)(8). 958 F.2d 738, 739 (6th Cir. 1992). The university, a non-profit institution, processed and submitted the student's loan application to the bank. In addition, the university guaranteed the balance due on the note in case of the student's default. Id. at 740. Although the university did not provide any of the direct funding for the student loan, the court held that the loan was funded, in part, by the university, and that therefore the loan was not dischargeable. Id. The court based its decision on the legislative history and purpose of the educational loan exception to discharge; specifically, that exclusion of educational loans was designed to remedy potential abuses of a commercial transaction in which unsecured credit is often extended "solely upon the belief that the student-debtor will have sufficient income to service the debt following graduation." Id. (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 466-75, reprinted in 1978 U.S.C.C.A.N. 5787). See also Santa Fe Medical Services, Inc. v. Segal, 57 F.3d 342, 348 (3d Cir. 1995) (reviewing the legislative history of section 523(a)(8)).

In In re O'Brien, the U.S. Court of Appeals for the Second Circuit held that a loan issued by a private bank, but guaranteed by a non-profit corporation under a student loan program, was not dischargeable under Section 523(a)(8). 419 F.3d 104, 107 (2d Cir. 2005). As in Merchant, the non-profit

entity did not provide any of the original funding for the loan in question; however, it did pay the bank the outstanding balance due on the loan when the borrower defaulted. The court, looking to the plain language of the statute, emphasized that the question was whether the non-profit entity funded the program through which the loan was made, rather than the loan itself. Id. at 106. Because the non-profit was "clearly devoting some of its financial resources to supporting the program", the court agreed with the district court's finding that the loan was made through a program funded by a nonprofit institution. Id. The court held that "§ 523(a)(8) includes within its meaning loans made pursuant to loan programs that are guaranteed by non-profit institutions." Id. at 107.

The United States Bankruptcy Court for the Western District of Pennsylvania also addressed the dischargability of loans made through joint programs between for-profit and non-profit entities. In re Drumm, 329 B.R. 23, 33-35 (Bankr. W.D. Pa. 2005). The court in Drumm restated the standard of section 523(a)(8)(A) as whether the non-profit entity "played a meaningful part in procurement of the loans." Id. at 35. The parties in Drumm stipulated that the loans at issue would not have been made without a guaranty agreement between the non-profit foundation and the for-profit corporation that together provided an educational loan "program." Id. Based on that

9

stipulation, the bankruptcy court found that the non-profit foundation played a meaningful part in procurement of the debtor's loans, and therefore, the loans were excepted from discharge under section 523(a)(8). Id.

It is undisputed that plaintiff here did not request an undue hardship determination at the time of his bankruptcy, and he has conceded that his condition does not rise to the level of undue hardship. Therefore, if the loan was "made under any program funded in whole or in part by a governmental unit or nonprofit institution," his loan was correctly exempted from discharge.[2]

Although the decisions of the U.S. Courts of Appeal for the Second and Sixth Circuits are not binding on this court, the reasoning in Merchant and O'Brien supports this court's understanding of the plain text of section 523(a)(8)(A). We agree that the analysis must consider not whether EduCap funded or partially funded plaintiff's loan, but rather whether EduCap funded or partially funded the program under which plaintiff's loan was made.

---

[2] Defendant does not argue that the loan qualifies for exemption from discharge under 11 U.S.C. § 523(a)(8)(B), which exempts "any other educational loan that is a qualified education loan," as defined in the Internal Revenue code. Plaintiff's loan may be a "qualified education loan," but because the court finds the loan to be exempt from discharge under section 523(a)(8)(A)(i), there is no need to analyze it under section 523(a)(8)(B).

10

Here, as in Merchant, O'Brien and Drumm, a for-profit corporation, Bank of America, provided all funding of the loan itself, while a non-profit entity, EduCap, guaranteed the loan. Educap also provided additional services, by disbursing and servicing the loan. Plaintiff argues that Congress, in its formulation of section 523(a)(8)(A)(i), made a distinction between guaranteeing a loan and "funding in whole or in part" a loan. He notes that the first clause of the provision ("loan made, insured, or guaranteed by a governmental unit") specifically references guaranteeing a loan, but the second clause ("made under any program funded in whole or in part by a governmental unit or nonprofit institution") does not. Because non-profit institutions are mentioned only in the second clause, plaintiff argues that Congress did not intend for a non-profit institution that only guaranteed a loan to qualify for the exemption.

The plaintiff's argument is not entirely without merit, but it fails to address the effect of the word "program" in the second clause of section 523(a)(8)(A)(i). Because the first clause refers to a "loan" and the second clause refers to a "program," the distinction identified by plaintiff is insufficient, by itself, to illuminate Congress' intent.

The court finds that EduCap, by acting as a disbursement agent, servicer and guarantor for education loans, funded the

11

program under which plaintiff's loan was issued. Like the non-profit entity in O'Brien, EduCap devoted its financial resources to the program by guaranteeing the loans provided by Bank of America, among other things. This decision is consistent with Merchant, O'Brien, and Drumm, and consistent with Congress' intentionally stringent limits on the dischargeability of educational loans. Segal, 57 F.3d at 348 ("[T]he legislative history of section 523(a)(8) teaches that the exclusion of educational loans from the discharge provisions was designed to remedy abuses of the educational loan system . . . and to safeguard the financial integrity of educational loan programs.")

Each of plaintiff's claims is premised on the fact that the loan at issue was discharged in bankruptcy. Because the loan was in fact properly excepted from discharge, plaintiff cannot prevail on his claims under the FDCPA, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, or tort law.

IV. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment will be granted as to both defendants. An appropriate order follows.

12

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES DECKER,

    Plaintiff,

v.

EDUCAP, INC. and
DAVIS DAVIS ATTORNEYS,

    Defendants.

Civil Action No. 11-0787

## ORDER

AND NOW, this 22nd day of May, 2012, having considered the defendants' motion for summary judgment [doc. no. 37], and any opposition thereto, IT IS HEREBY ORDERED that the motion for summary judgment is GRANTED as to defendant EduCap, Inc. and defendant Davis Davis Attorneys.

BY THE COURT:

_____, C.J.

cc: All Counsel of Record